UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOLLIE LIN NELSON,
o/b/o D.L.N.,

                Plaintiff,             Civil Action No. 12-15095
                                                 Honorable Terrence G. Berg
                                                 Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

### REPORT AND RECOMMENDATION
### ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [8, 10]

Hollie Lin Nelson brings this action on behalf of her minor daughter, D.L.N. ("Plaintiff"),[1] pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [8, 10], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [10] be GRANTED, Plaintiff's Motion for Summary Judgment [8] be DENIED, and

---

[1] For convenience, the Court will refer to D.L.N., the minor child, as "Plaintiff" throughout this Report and Recommendation, although her mother, Hollie Lin Nelson, is the named plaintiff in this action.

that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On September 7, 2010, an application for SSI was filed on behalf of Plaintiff, alleging a disability onset date of September 1, 2010. (Tr. 117-20). This application was denied initially on October 27, 2010. (Tr. 69-72). A timely request for an administrative hearing was filed on Plaintiff's behalf, and a hearing was held on August 15, 2011, before ALJ John Ransom. (Tr. 27-42). Both Plaintiff and her mother, who were represented by attorney Jeffrey Atkin, appeared and testified at the hearing. (*Id.*). On September 14, 2011, the ALJ issued a written decision finding that Plaintiff was not disabled. (Tr. 13-23). On September 19, 2012, the Appeals Council denied review. (Tr. 1-3). On behalf of Plaintiff, Ms. Nelson timely filed for judicial review of the final decision on November 17, 2012. (Doc. #1).

### B. Background

#### 1. *Disability Reports*

Plaintiff was born on April 12, 2000, making her ten years old at the time her application for SSI was filed. (Tr. 133). In an undated disability report, Ms. Nelson reported that Plaintiff suffers from attention deficit hyperactivity disorder ("ADHD"), emotional problems, bipolar disorder, anger, and hypersexuality and first became disabled on September 1, 2010. (Tr. 137, 139). Ms. Nelson indicated that Plaintiff had been seen for her emotional/mental problems at Mott Children's Health Center. (*Id.*). At the time of the report, Plaintiff was taking three medications for her ADHD: Adderall and Concerta (which made her "more aggressive"), and Tenex (which upset her stomach and made her both "more aggressive" and "more tired"). (Tr. 138). At the time of the report, Plaintiff was in fifth grade and was not taking special education

classes. (Tr. 139).

In a September 24, 2010 daily activities report, Ms. Nelson indicated that Plaintiff spends her days attending school, playing, riding bikes, talking on the phone, doing homework, and watching television. (Tr. 142). Ms. Nelson reported that Plaintiff has one friend who she interacts with on a daily basis (dancing, talking on the phone, or playing on the computer). (*Id.*). However, Plaintiff has punched her friend "a few times" and given her a bloody nose. (*Id.*). She is "very disrespectful" to adults. (*Id.*). Plaintiff has two half-siblings, who she is eager to see when they are at their father's house, but then fights with (both verbally and physically) when they are at her home. (*Id.*). According to Ms. Nelson, Plaintiff is "very temperamental" and "doesn't like authority." (Tr. 143). Plaintiff can clean her room, take care of her clothes, and make her bed, although she does require some supervision. (Tr. 144). Ms. Nelson indicated that Plaintiff is able to care for her personal needs, although she "doesn't wash properly" and sometimes needs assistance getting dressed because "she wants to be lazy." (*Id.*). She is able to prepare food such as sandwiches or cereal on a daily basis, vacuum her room on a weekly basis, occasionally babysit for other children, use public transportation, read, and shop. (Tr. 145-46).

In an undated disability appeals report, Ms. Nelson reported that Plaintiff's condition had worsened since the time of her last report and she had "severe bipolar and ADHD." (Tr. 183). However, she had no new mental or physical limitations. (*Id.*). Her medications had changed to melatonin (to help her sleep) and Strattera (for bipolar disorder). (Tr. 184).

  2.  *The Administrative Hearing*

At the time of the August 15, 2011 hearing before the ALJ, Plaintiff was eleven years old and going into sixth grade. (Tr. 30). She was taking "regular classes" (as opposed to special education classes) and was doing "okay" in school. (*Id.*). Plaintiff testified that she likes to

color, read, play games on her mother's cell phone, and watch television. (Tr. 39-40). She also likes to ride bikes and play with her half-brother and half-sister. (*Id.*).

Ms. Nelson testified that Plaintiff had been diagnosed with ADHD and oppositional defiant disorder ("ODD"). (Tr. 31). Ms. Nelson further testified that Plaintiff gets into fights (both verbal and physical) with her peers, and is inappropriately hostile with her friends and teachers. (Tr. 31-32). Plaintiff has been disciplined at school for getting into verbal confrontations with other students, but has never been suspended. (Tr. 33-34). In addition, Plaintiff has difficulty staying focused and frequently becomes angry. (Tr. 35). According to Ms. Nelson, Plaintiff "gets into it" with her school bus driver, but she has never been kicked off the bus. (Tr. 40).

Although Plaintiff had tried several different medications in the past, Ms. Nelson testified that none were effective and – at the time of the hearing – Plaintiff had been off medication entirely for approximately ten months. (Tr. 35-36). In addition, Plaintiff had neither seen a doctor, nor received counseling or therapy of any kind, in several months; she had been discharged by her providers for missing too many appointments. (Tr. 36, 40).

    *3.*    *Medical Evidence*

The medical evidence establishes that Plaintiff has been diagnosed with ADHD, ODD, and bipolar disorder. She treated with Daniel Dulin, Psy.D., at Mott Children's Health Center from approximately June of 2009 through October of 2010.

At her intake session on June 9, 2009, Dr. Dulin noted that Plaintiff was "exhibiting classic signs of ADHD" and developing "ODD type pattern." (Tr. 256, 258). He assigned a Global Assessment of Functioning ("GAF")[2] score of 55 and indicated that Plaintiff would likely

---

[2] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental

benefit from both therapy and medication support. (Tr. 258-59). Plaintiff attended therapy sessions with Dr. Dulin approximately once or twice a month throughout the remainder of 2009, during which time her GAF scores ranged from 55-59. (Tr. 230-79). At a Treatment Plan Review on December 7, 2009, Dr. Dulin noted that Plaintiff had started taking medication for ADHD, but was "just beginning the adjustment process." (Tr. 368). He also indicated that there had been "some improvement at school with med support." (*Id.*).

On November 9, 2009, Plaintiff underwent an independent psychological evaluation. (Tr. 211-13). During this evaluation, Plaintiff was oriented at an age appropriate level; demonstrated normal thought content, unimpaired speech, and organized thought processes; and exhibited "hyperactive" psychomotor activity. (Tr. 212). The examining psychologist concluded that Plaintiff's abilities to acquire and use information, as well as to complete tasks, were moderately impaired. (Tr. 213). He also opined that Plaintiff's abilities to interact and relate to others were mildly impaired. (*Id.*). No limitations were noted with regard to Plaintiff's abilities to move about, manipulate objects, attend to self-care, or maintain her physical well-being. (*Id.*). Overall, the psychologist concluded that Plaintiff's condition "would moderately impair her ability to maintain age appropriate behaviors." (*Id.*). A GAF score of 60 was assigned. (*Id.*).

Plaintiff continued to treat at Mott Children's Health Center through October of 2010, seeing Dr. Dulin approximately once a month for therapy sessions and also appearing occasionally for medication reviews. From January of 2010 through October of 2010, Plaintiff's symptoms remained relatively stable and her GAF scores ranged from 45-65.[3] (Tr. 219-29, 280-

---

limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

[3] In September of 2010, when Plaintiff's GAF score dipped to 45, the record indicates that adjustments were being made to her medications, and she seemed worse on the medications

96). At a September 22, 2010 treatment plan review, Dr. Dulin noted that Plaintiff's progress had been "moderate" and that medication management and adjustment was still in a "trial phase." (Tr. 370). Plaintiff did not receive treatment after October of 2010.

> 4. *School Records and Evaluations*

On April 23, 2008, a special education evaluation was performed by the Kearsley Community Schools, where Plaintiff was enrolled in second grade. (Tr. 157-62, 214-18). Based on the findings, Plaintiff was deemed ineligible for special education services. (Tr. 157, 218).

On her fourth grade report card, Plaintiff received mostly B's, C's, and satisfactory ratings. (Tr. 176-77). Plaintiff's teacher commented that she is a "nice girl" and has "improved her organization and getting assignments in on time." (Tr. 177).

A "teacher questionnaire" was completed on September 29, 2010, by Plaintiff's fifth grade teacher, Nancy Herta, with input from Plaintiff's fourth grade teacher, Tamara Ratliff. (Tr. 166-73). At the time, Plaintiff had been in fifth grade for only one month and was experiencing a high level of tardiness. (Tr. 166). Ms. Herta and Ms. Ratliff opined that Plaintiff had no more than slight problems with acquiring and using information (specifically, reading and comprehending written material, comprehending and doing math problems, learning new material, and recalling and applying previously learned material). (Tr. 167). They further opined that Plaintiff had no more than slight problems in the domain of attending and completing tasks (except for an obvious problem completing class/homework assignments). (Tr. 168). Ms. Herta and Ms. Ratliff also opined that Plaintiff had no problems in the domains of interacting and relating with others, moving about and manipulating objects, or caring for herself. (Tr. 169-71). They indicated that they did not know whether Plaintiff took her prescribed medication on a

---

prescribed at that time. (Tr. 219).

6

regular basis, but she did not frequently miss school due to illness. (Tr. 172).

### C. Framework for Child Disability Determinations

A child under age eighteen is considered "disabled" within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). The Social Security regulations set forth a sequential three-step process for determining children's disability claims: first, the child must not be engaged in "substantial gainful activity"; second, the child must have a "severe" impairment; and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *See* 20 C.F.R. §416.924(a).

To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of the impairment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. "Paragraph A of the listings is a composite of medical findings which are used to substantiate the existence of a disorder," whereas the "purpose of the paragraph B criteria is to describe impairment-related functional limitations which are applicable to children." *Id.* Further, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the Listing. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

If a child's impairment does not "meet" a listed impairment, the impairment may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. *See* 20 C.F.R. §416.926a. "Medical equivalency is covered by 20 C.F.R. §416.926; functional equivalency is covered by Section 416.926a." *Vansickle v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 727, 729 (E.D. Mich. 2003).

"To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment." *Walls v. Comm'r of Soc. Sec.*, 2009 WL 1741375, at *8 (S.D. Ohio June 18, 2009) (citing 20 C.F.R. §416.926(a)). A claimant can demonstrate medical equivalence in any of three ways:

> (1) by demonstrating an impairment contained in the Listings, but which does not exhibit one or more of the findings specified in the particular listing, or exhibits all of the findings but one or more of the findings is not as severe as specified in the particular listing, if the claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria;
>
> (2) by demonstrating an impairment not contained in the Listings, but with findings at least of equal medical significance to those of some closely analogous listed impairment; or
>
> (3) by demonstrating a combination of impairments, no one of which meets a Listing, but which in combination produce findings at least of equal medical significance to those of a listed impairment.

*Evans ex rel. DCB v. Comm'r of Soc. Sec.*, 2012 WL 3112415, at *6 (E.D. Mich. Mar. 21, 2012) (quoting *Koepp v. Astrue*, 2011 WL 3021466, at *10 (E.D. Wis. July 22, 2011)); *see also* 20 C.F.R. §416.926. "The essence of these subsections is that strict conformity with the Listing Requirements is not necessarily required for a finding of disability. If a plaintiff is only able to demonstrate most of the requirements for a Listing or if he or she is able to demonstrate analogous or similar impairments to the impairments of a Listing, the plaintiff may nonetheless still satisfy the standards if the plaintiff can show impairments of equal medical significance." *Evans*, 2012 WL 3112415, at *7 (quoting *Emeonye v. Astrue*, 2008 WL 1990822, at *4 (N.D. Cal. May 5, 2008)).

Regarding functional equivalence, there are six "domains" that an ALJ considers: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating

8

with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *See* 20 C.F.R. §416.926a. Functional equivalence to a listed impairment exists when the child has an "extreme" limitation in one of the six domains or "marked" limitations in two of the six. *See* 20 C.F.R. §416.926a(d). An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(3)(i). A "marked" limitation results if the child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(2)(i).

### D.     The ALJ's Findings

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 7, 2010, the application date. (Tr. 16). At step two, the ALJ found that Plaintiff has the following severe impairments: ADHD, ODD, and bipolar disorder. (*Id.*). At step three, the ALJ concluded that these impairments do not meet or medically equal a listed impairment. (Tr. 17). The ALJ also found that Plaintiff's impairments do not functionally equal any Listing because she has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, and no limitations in the remaining domains. (Tr. 18-22).

### E.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

9

591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the

reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F. Analysis**

   *1. Plaintiff's Argument that the ALJ Erred by "Failing to Properly Evaluate All the Medical Records and Opinions of Evidence" is Without Merit*

In her motion for summary judgment, Plaintiff argues that the ALJ failed to provide good reasons for the weight given to her treating source's opinion and "fail[ed] to evaluate all the medical records of evidence." (Doc. #8 at 7-12). Although Plaintiff cites the "treating physician rule" (*Id.* at 11), she specifies neither the identity of the treating source to which she refers nor any particular "opinion" that person rendered which the ALJ allegedly failed to consider. Assuming Plaintiff is referring to Dr. Dulin, the Court notes that she treated with him only until October of 2010 – just one month after her alleged onset date – and Dr. Dulin did not submit a medical source statement regarding Plaintiff's limitations. There are no other records in evidence reflecting any medical treatment received by Plaintiff after this time. Thus, any argument by Plaintiff that the ALJ failed to give good reasons for the weight given to her treating source's opinion is wholly without merit.

Similarly, although Plaintiff vaguely asserts (in a heading in her motion) that the ALJ failed to "properly evaluate all the medical records," she does not identify any specific medical records that the ALJ allegedly overlooked or improperly evaluated. *See McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court

11

to … put flesh on its bones.") (internal quotations omitted). Thus, this argument too fails.[4] Moreover, as set forth more fully below, the ALJ's findings are supported by substantial evidence.

> 2. *The ALJ's Finding that Plaintiff's Impairments Do Not Functionally Equal a Listing is Supported by Substantial Evidence*

Although Plaintiff advances only the two vague arguments discussed above, the fundamental question for this Court is whether the ALJ's determination that Plaintiff's impairments do not functionally equal a Listing is supported by substantial evidence. *See Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 468 (6th Cir. 2004). In order to establish functional equivalence, Plaintiff must show "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. *See* 20 C.F.R. §416.926a(d). In order for a limitation to be considered marked, the child's impairments must interfere "seriously" with her ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(2)(i). A marked limitation also means a limitation that is "more than moderate" but "less than extreme." *Id.* For a limitation to be considered extreme, the child's impairments must interfere "very seriously" with the ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(3)(i). An extreme limitation is the rating given to "the worst limitations." *Id.*

In this case, after reviewing the medical and other record evidence, reports, and hearing testimony, the ALJ concluded that Plaintiff has less than marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others. (Tr.

---

[4] To the extent Plaintiff also is arguing that the ALJ erred in evaluating her school records (Doc. #8 at 9-10 (referring to reports from Plaintiff's teachers)), such an argument fails. As an initial matter, several of the school records Plaintiff cites significantly pre-date her September 1, 2010 alleged onset date. (*Id.* (citing Tr. 195 (a note from Plaintiff's second grade teacher, dated November 21, 2007); Tr. 199 (Plaintiff's first grade report card from June 2007); Tr. 207 and 2009 (Plaintiff's kindergarten report cards from 2006)). In addition, as discussed in greater detail below, the ALJ properly considered Plaintiff's relevant school records in determining that her impairments do not functionally equal a Listing. *See* Section F(2)(a) and (b), *infra*.

12

18-20). Further, the ALJ found no limitations in the domains of moving about and manipulating objects, caring for oneself, and health and physical well-being. (Tr. 20-22). As set forth more fully below, these findings are supported by substantial evidence.

### a. Acquiring and Using Information

The domain of acquiring and using information addresses how well a child acquires or learns information, and how well she uses the information she has learned. *See* 20 C.F.R. §416.926a(g). A school-age child (age 6 to attainment of age 12) should be able to learn to read, write, do math, and discuss history and science. *See* 20 C.F.R. §416.926a(g)(2)(iv). The child will need to use these skills in academic situations to demonstrate what she has learned by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. *Id.* The child will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). *Id.* She should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing her own ideas, and by understanding and responding to the opinions of others. *Id.* Examples of limited functioning in this domain, which are not age-specific, include difficulty recalling important things learned in school previously; difficulty solving math problems; or talking only in short, simple sentences, with difficulty explaining what is meant. *See* 20 C.F.R. §416.926a(g)(3).

In this case, the ALJ found that Plaintiff has a less than marked limitation in acquiring and using information. (Tr. 18-19). Substantial evidence supports this finding. Plaintiff was tested and deemed ineligible for special education classes. (Tr. 157, 218). Ms. Nelson testified at the hearing that Plaintiff was doing "okay" in regular education classes, and she continued to

13

receive passing grades. (Tr. 17, 30, 176-77). In addition, Plaintiff's teachers, Ms. Herta and Ms. Ratliff, reported that Plaintiff has no more than slight problems with acquiring and using information (specifically, reading and comprehending written material, comprehending and doing math problems, learning new material, and recalling and applying previously learned material). (Tr. 167). In summary, it was reasonable for the ALJ to conclude that Plaintiff has a less than marked limitation in this domain.

### b. *Attending and Completing Tasks*

The domain of attending and completing tasks considers how well a child is able to focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the pace at which she performs activities and the ease with which she can change them. *See* 20 C.F.R. §416.926a(h). A school-age child should be able to focus her attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. *See* 20 C.F.R. §416.926a(h)(2)(iv). The child should be able to concentrate on details and not make careless mistakes, stay on task and in place when appropriate, and sustain attention well enough to participate in group sports, read by herself, and complete family chores. *Id.* The child also should be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. *Id.* Examples of limited functioning in this domain, which are not age-specific, include being slow to focus on or failing to complete activities of interest; repeatedly becoming sidetracked from activities or frequently interrupting others; becoming easily frustrated and giving up on tasks; and requiring extra supervision to remain engaged in an activity. *See* 20 C.F.R. §416.926a(h)(3).

The ALJ found that Plaintiff has a less than marked limitation in attending and

completing tasks. (Tr. 19-20). Plaintiff's teachers reported that she has no more than slight problems in this domain (except for an obvious problem completing class/homework assignments). (Tr. 168). Even so, as the ALJ noted, Plaintiff's grades were satisfactory, and she advanced to the next grade level each year. (Tr. 17, 30, 176-77). Additionally, medical records from Mott Children's Health Center reveal that Plaintiff maintains attention, has logical and tangential thought processes, and intact memory. (Tr. 220). Plaintiff does her homework from 6:00-7:00 p.m. each night, prepares simple meals, reads books, and plays games on her mother's cell phone. (Tr. 39-40, 142-46). Thus, the evidence supports the ALJ's conclusion that Plaintiff has a less than marked limitation in attending and completing tasks.

*c.      Interacting and Relating with Others*

The domain of interacting and relating with others addresses how well a child initiates and sustains emotional connections with others, develops and uses the language of her community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. *See* 20 C.F.R. §416.926a(i). A school-age child should be able to develop more lasting friendships with children of the same age; begin to understand how to work in groups to create projects and solve problems; have an increasing ability to understand another's point of view and to tolerate differences; and talk to people of all ages, share ideas, tell stories, and speak in a manner that both familiar and unfamiliar listeners readily understand. *See* 20 C.F.R. §416.926a(i)(2)(iv). Examples of limited functioning in this domain, which are not age-specific, include having no close friends; avoiding or withdrawing from people that are known; being overly anxious or fearful of meeting new people or trying new experiences; having difficulty playing games or sports with rules; having difficulty communicating with others; or having difficulty speaking intelligibly or with adequate fluency.

15

*See* 20 C.F.R. §416.926a(i)(3).

The ALJ found that Plaintiff has a less than marked limitation in interacting and relating with others. (Tr. 20). He correctly noted that Plaintiff is "able to establish and maintain friendships." (Tr. 16). Although Ms. Nelson reported that Plaintiff sometimes has difficulty getting along with her half-siblings and her friend (Tr. 142), Plaintiff testified that she likes playing with her brother and sister. (Tr. 39-40). Ms. Nelson also reported that Plaintiff has friends (including a best friend), with whom she plays, talks on the phone, and interacts on the computer. (Tr. 142). Ms. Nelson also testified that, although Plaintiff "gets into it" with her school bus driver, she has never been kicked off the bus. (Tr. 40). In addition, Dr. Dulin reported that Plaintiff has unremarkable behavior and appropriate speech. (Tr. 220). Plaintiff's teachers also reported that Plaintiff has no problems interacting and relating with others and that they can understand almost all of her speech. (Tr. 169-70). Thus, substantial evidence supports the ALJ's finding of a less than marked limitation in this domain.

### d.   *Moving About and Manipulating Objects*

The domain of moving about and manipulating objects considers how well a child is able to move her body from one place to another and how a child moves and manipulates objects. *See* 20 C.F.R. §416.926a(j). These are called gross and fine motor skills. *Id.* A school-age child should have gross motor skills that let her move at an efficient pace at school, home, and throughout the neighborhood. *See* 20 C.F.R. §416.926a(j)(2)(iv). The child's increasing strength and coordination should expand her ability to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching, and hitting balls in informal play or organized sports. *Id.* The child's developing fine motor skills should enable her to do things like use many kitchen and household tools independently, use scissors, and write. *Id.* Examples of

limited functioning in this domain, which are not age-specific, include difficulty with motor activities (stumbling, unintentionally dropping things) because of muscle weakness, joint stiffness, or sensory loss; difficulty with balance or climbing up and down stairs, or jerky or disorganized locomotion; difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike); difficulty with sequencing hand or finger movements; difficulty with fine motor movement (e.g., gripping or grasping objects); or poor eye-hand coordination when using a pencil or scissors. *See* 20 C.F.R. §416.926a(j)(3).

The ALJ found that Plaintiff has no limitation in moving about and manipulating objects. (Tr. 20-21). No physical impairments are documented in the record, and, indeed, Plaintiff does not claim that she has any physical limitations. (Tr. 137). The evidence establishes that Plaintiff plays, rides her bike, performs chores, prepares simple meals, and babysits. (Tr. 39-40, 145). Plaintiff's teachers reported that she has no limitation in moving about and manipulating objects. (Tr. 170). Likewise, the independent psychologist who examined Plaintiff on November 9, 2009, opined that she has no limitation in this domain. (Tr. 213). Thus, the ALJ reasonably found that Plaintiff has no limitation in the domain of moving about and manipulating objects.

### e. *Caring for Oneself*

The domain of caring for oneself considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies her physical and emotional wants and needs in appropriate ways. *See* 20 C.F.R. §416.926a(k). This includes how the child copes with stress and changes in the environment and whether the child takes care of her own health, possessions, and living area. *Id.* A school-age child should be independent in most day-to-day activities (e.g., dressing and bathing), although she may still need to be reminded sometimes to do these routinely. *See* 20 C.F.R. §416.926a(k)(2)(iv). The child should begin to

recognize that she is competent in doing some activities but has difficulty doing others. *Id.* The child should be able to identify those circumstances when she feels good about herself and when she feels bad. *Id.* The child should begin to develop an understanding of what is right and wrong, and what is acceptable and unacceptable behavior. *Id.* The child should also begin to demonstrate consistent control over her behavior, and be able to avoid behaviors that are unsafe or otherwise not good for her and begin imitating more of the behavior of adults she knows. *Id.* Examples of limited functioning in this domain, which are not age-specific, include continuing to place non-nutritive or inedible objects in the mouth; using self-soothing activities that are developmentally regressive (e.g., thumb-sucking or re-chewing food); not dressing or bathing age-appropriately; engaging in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take medication) or ignoring safety rules; not spontaneously pursuing enjoyable activities or interests; or having disturbances in eating or sleeping patterns. *See* 20 C.F.R. §416.926a(k)(3).

      The ALJ found that Plaintiff has no limitation in caring for herself. (Tr. 21-22). The record evidence establishes that Plaintiff can prepare food such as sandwiches or cereal, vacuum her room, and babysit for other children. (Tr. 145). She can clean her room, take care of her clothes, and make her bed (with some oversight). (Tr. 144). She can get dressed for school, bathe herself, do homework, and shop. (Tr. 142, 144, 146). Moreover, both Plaintiff's teachers and the independent psychologist reported that she does not have any problems taking care of herself. (Tr. 171, 213). Thus, substantial evidence supports the ALJ's finding in this domain.

                        f.        *Health and Physical Well-Being*

      The domain of health and physical well-being considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's

functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. *See* 20 C.F.R. §416.926a(l). Examples of limited functioning in this domain, which are not age-specific, include the following: generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of any impairment(s); somatic complaints related to an impairment (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches or insomnia); limitations in physical functioning because of treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); exacerbations from an impairment that interfere with physical functioning; or medical fragility requiring intensive medical care to maintain the child's level of health and physical well-being. *See* 20 C.F.R. §416.926a(l)(4).

In this case, the ALJ found that Plaintiff has no limitation in her health and physical well-being. (Tr. 22). The ALJ noted that, despite the fact that Plaintiff had been off medication – and had received no mental health counseling – for approximately ten months, she was doing "okay" in school and receiving passing grades. (Tr. 17, 30). In addition, Plaintiff's teachers reported that Plaintiff did not miss school frequency due to any illness. (Tr. 172). Likewise, the independent psychologist who examined Plaintiff opined that she has no limitation in this domain. (Tr. 213). Thus, the ALJ reasonably found that Plaintiff has no limitation in her health and physical well-being.

In summary, substantial evidence supports the ALJ's functional equivalence finding, as Plaintiff does not have an impairment or combination of impairments that result in either marked limitations in at least two domains or an extreme limitation in one domain.

## III. CONCLUSION

For the foregoing reasons, the court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **[10]** be **GRANTED**, Plaintiff's Motion for Summary Judgment **[8]** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: August 13, 2013　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 13, 2013.

　　　　　　　　　　　　　　　　　　　　　　s/Felicia M. Moses
　　　　　　　　　　　　　　　　　　　　　　FELICIA M. MOSES
　　　　　　　　　　　　　　　　　　　　　　Case Manager